AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) |
| Precision Location Information; Subscriber & Transactional Records; Cell Site Information; Pen Register & Trap-and-Trace for Phone # (314) 365-5674 | ) ) ) |

Case No.  4:23 MJ 3354 NCC

SIGNED AND SUBMITTED TO THE COURT FOR
FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21:841(a)(1); | Possession with intent to distribute a controlled substance; |
| 21:846 | Conspiracy to distribute a controlled substance |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

CARLOS QUILES   Digitally signed by CARLOS QUILES
Date: 2023.10.20 12:00:09 -05'00'

*Applicant's signature*

SA Carlos Quiles, ATF

*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: _____ 10/20/2023 _____

*Judge's signature*

City and state:        St. Louis, MO                    Honorable Noelle C. Collins, U.S. Magistrate Judge

*Printed name and title*

## ATTACHMENT A

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

**I.      The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| Verizon | (314) 365-5674<br><br>(the subject cellular telephone) | | Dorian TURNER |

**II.      The Provider**

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of Verizon**,** and other applicable service providers reflected on the list contained in this Attachment A**,** including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm |   Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
|   d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications |   Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications |   Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [2] |
| | Metro Teleconnect | | |

---

[2] Last Update: 03/17/2019

## ATTACHMENT B

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

## I.      PRECISION LOCATION INFORMATION

### A.      Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from October 20, 2023, to December 3, 2023, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

### B.      Information to Be Seized by the United States

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Section 841 and 846 involving Dorian TURNER and others known and/or unknown.

## II.      CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

1

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6.    Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.     Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)     call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)     cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)     numbers dialed;

(d)     call duration;

(e)     incoming numbers if identified;

(f)     signaling information pertaining to that number;

(g)     a listing of all control channels and their corresponding cell sites;

(h)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(i)     historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(j)     Time Difference of Arrival (TDOA), and,

3

(k)     Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

(l)     Data records include all date connections between the device and the network via the subject cellular telephone.

## III.   PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.     Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to

4

send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c.   IP addresses of any websites or other servers to which the subject cellular telephone connected;

d.   Source and destination telephone numbers and email addresses;

e.   "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.      The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace

devices, including enhanced caller identification, at reasonable intervals for the duration of this
Warrant and Order.

5.      Should the subject cellular telephone identified in Attachment A and/or ESN, MIN,
IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period
of this Order, the request for pen register and trap and trace devices, including enhanced caller
identification, shall remain in effect for any new telephone to which the subject cellular telephone
listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire
and/or electronic communications, and any other applicable service providers, shall be provided
compensation by the lead investigative agency for reasonable expenses incurred in providing
technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider,
and the service providers reflected in Attachment A, to include providers of any type of wire and/or
electronic communications, and any other applicable service providers, shall not disclose the
existence of this application and/or any warrant or order issued upon this application, or the
existence of the investigation, for a period of one year from the date of this Order to a subscriber
or lessee or to any other person, except that the provider may disclose the warrant to an attorney
for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined
in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling
information, including cell site information, precision location information, including GPS
information, related to the subject cellular telephone.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )      No. 4:23 MJ 3354 NCC
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION; )    **FILED UNDER SEAL**
SUBSCRIBER AND TRANSACTIONAL )
RECORDS; CELL SITE INFORMATION; )    SIGNED AND SUBMITTED TO THE COURT
AND FOR A PEN REGISTER AND TRAP )    FOR FILING BY RELIABLE ELECTRONIC MEANS
AND TRACE DEVICES FOR PHONE )
NUMBER (314) 365-5674. )

**AFFIDAVIT**

I, Carlos Quiles, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a warrant and order pursuant
to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated
with a cellular telephone (314) 365-5674 (hereinafter referred to as the "**subject cellular
telephone**") to require Verizon (hereinafter "the Provider"), and/or any service providers reflected
in Attachment A, to include providers of any type of wire and/or electronic communications, and
any other applicable service providers, to disclose to the United States location information,
including precision location information, transactional and subscriber data and cell site location
information, and the installation and use of other pen register and trap and trace devices associated
with the **subject cellular telephone,** as described in Attachment B to the requested warrant and
order.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and
Explosives (ATF), and have been since August 2022. My current assignment is with the St. Louis

1

Field Office of the Kansas City Field Division where I investigate violations of federal law pertaining to firearms and violent crimes involving the use of firearms and explosives. Prior to my employment with ATF, I was a police officer with the City of Hazelwood Missouri Police Department from 2016 until 2022. I have served in the United States Army Reserve since 2014, first as a military police officer, and currently as a Criminal Investigation Division Special Agent. During my law enforcement career, I have participated in numerous investigations involving controlled substances and firearms offenses. I am familiar with and have used various methods of investigations which include electronic surveillance, interviews of suspects and witnesses, search warrants, arrest warrants, and the handling of confidential informants.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with, violation of Title 21, United States Code, Section 841 and 846 (hereinafter referred to as "the subject offense"), Dorian TURNER and others known and unknown. There is

2

also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offense as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### BACKGROUND CONCERNING WIRELESS PROVIDERS

6.     Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b.     Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.  For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.  Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.  Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

3

c.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.  The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").   When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.      Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all

4

telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

       f.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

       g.      In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision

5

location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

7.      The United States, including ATF, is conducting a criminal investigation of TURNER regarding the commission of the subject offenses.

8.      The United States previously investigated (and is still investigating) TURNER's illegal use of firearms, as well as his ties to the Minnomob street gang.  As part of that investigation, the United States obtained a federal search warrant in the United States District Court for the Eastern District of Missouri for certain information from what was determined to be TURNER's Instagram account.  4:23-MJ-7284 SPM.

9.      As a result of certain records received pursuant to that subpoena, investigators believed that TURNER was dealing drugs.  After reviewing his Instagram records and speaking to his Missouri Probation Officers, investigators first located the phone number (314) 296-0083 for TURNER.

### First Controlled Buy Using Subject Cellular Telephone

10.      During late September 2023, an ATF confidential informant (CI)[1] called the phone number (314) 296-0083 to buy drugs.  He spoke with a man (later determined to be TURNER) who then called him back from the **subject cellular telephone** number instead.   TURNER then told the CI where to meet.

11.      TURNER then called the CI back from the **subject cellular telephone** when the CI was with an ATF undercover special agent (UC).  TURNER instructed them to meet at a different

---

[1] The CI has felony convictions for controlled substances offenses and is working for monetary consideration. The CI's information has been reliable in past ATF investigations.

location within the Eastern District of Missouri.  The CI and UC then called TURNER back at the **subject cellular telephone**.  TURNER (who was recognizable from his photographs in law enforcement and/or public records) then exited a nearby residence and approached the vehicle that the CI and UC were inside.  TURNER then gave the CI pill capsules of suspected controlled substances in exchange for $100 in ATF agent cashier funds.  The pill capsules were transported to the St. Louis Metropolitan Police Department (SLMPD) Criminal Laboratory for testing. The SLMPD Criminal Laboratory provided results indicating the presence of fentanyl in the above-described pill capsules. The SLMPD Criminal Laboratory estimated the gross weight of the narcotics to be approximately 4.65 grams.

### Second Controlled Buy Using Subject Cellular Telephone

12.     A few days later, an ATF UC contacted TURNER at the **subject cellular telephone** and requested to purchase $150.00 worth of narcotics.  TURNER advised the UC to meet him in a particular area in St. Louis Missouri. While *en route*, through several phone calls, the ATF UC was advised by TURNER through the **subject cellular telephone** to meet him at a different location in St. Louis, Missouri.  Upon their arrival the ATF UC contacted TURNER through the **subject cellular telephone** advising him they had arrived at the predetermined location. A short time later TURNER arrived and was contacted by the ATF UC. The ATF UC exchanged $150.00 of ATF ACF for a baggie containing pill capsules. The pill capsules were transported to the SLMPD Criminal Laboratory for testing. The SLMPD Criminal Laboratory provided results indicating the presence of fentanyl in the above-described pill capsules. The SLMPD Criminal Laboratory estimated the gross weight of the narcotics to be approximately 5.44 grams.

7

**Third Controlled Buy Using Subject Cellular Telephone**

13.     On October 5, 2023, an ATF UC contacted TURNER at the **subject cellular telephone** and requested to purchase $275.00 worth of drugs. TURNER advised the UC to meet him at a location within the Eastern District of Missouri. Upon their arrival the UC contacted TURNER at the **subject cellular telephone** and advised him of their arrival. TURNER advised the UC he was on the way and arrived a short time later. The UC contacted TURNER in his vehicle. While contacting TURNER, the ATF UC observed another unknown male in the vehicle with TURNER in possession of an unknown AR-pistol type firearm. The ATF UC exchanged $275.00 in ATF ACF funds for a baggie containing pill capsules and a white rock like substance. Investigators tested the white rock like substance utilizing a presumptive drug test, which resulted in the positive indication of methamphetamine. The suspected methamphetamine revealed to have a gross weight of approximately 29 grams. The methamphetamine was released to Drug Enforcement Agency (DEA) Special Agent (SA) Bill Kohler for purity testing at the DEA Criminal Laboratory. The pill capsules were transported to the SLMPD Criminal Laboratory for testing. The SLMPD Criminal Laboratory provided results indicating the presence of fentanyl in the above-described pill capsules. The SLMPD Criminal Laboratory estimated the gross weight of the narcotics to be approximately 3.81 grams.

**Other Information Related to Probable Cause**

14.     Through law enforcement databases, it was determined the **subject cellular telephone**, was a Verizon phone number as of October 11, 2023.

15.     Because TURNER used the **subject cellular telephone** to coordinate three drug distributions, there is probable cause to believe that the requested warrant will lead to evidence of

the subject offenses.  Given the relative recency of the transactions, it appears likely TURNER is still using the **subject cellular telephone** in regard to drug transactions.

16.     In my training and experience, the requested information may lead to stash locations for drugs and/or the proceeds of TURNER's drug trafficking.  Additionally, information regarding the **subject cellular telephone** may lead to the identification of TURNER's potential co-conspirators and/or lead to information regarding additional transactions and/or TURNER's source of supply.  My training and experience informs me that drug traffickers commonly use their phones to coordinate with co-conspirators and/or have their phones with them as they travel to meet co-conspirators and/or purchasers.

## **CONCLUSION**

17.     Based on the above information, I submit that there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with the commission of the subject offense, by TURNER and others known and/or unknown.  There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offense as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

18.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.  Furthermore, the criminal conduct being investigated is not limited to the daytime.  Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.   Accordingly, the investigative agency(ies), and other authorized

9

federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

19.     The monitoring of the location of the subject cellular telephone by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

I state under the penalty of perjury that the foregoing is true and correct.

CARLOS QUILES    Digitally signed by CARLOS QUILES
Date: 2023.10.20 12:05:37 -05'00'

DATE                                CARLOS QUILES
                                    Special Agent
                                    ATF

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on October _____20_____, 2023.

HONORABLE NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

10

**ATTACHMENT A**

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

**I.      The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| Verizon | (314) 365-5674  (the subject cellular telephone) | | Dorian TURNER |

**II.      The Provider**

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of Verizon**,** and other applicable service providers reflected on the list contained in this Attachment A**,** including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [2] |
| | Metro Teleconnect | | |

---

[2]  Last Update: 03/17/2019

2

**ATTACHMENT B**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

**I.    PRECISION LOCATION INFORMATION**

    **A.    Information to be Disclosed by the Provider**

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from October 20, 2023, to December 3, 2023, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

    **B.    Information to Be Seized by the United States**

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Section 841 and 846 involving Dorian TURNER and others known and/or unknown.

**II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA**

1

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1. All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2. Length of service;

3. All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4. Subscriber information available for any originating telephone number;

5. Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6. Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

2

7.     Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)     call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)     cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)     numbers dialed;

(d)     call duration;

(e)     incoming numbers if identified;

(f)     signaling information pertaining to that number;

(g)     a listing of all control channels and their corresponding cell sites;

(h)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(i)     historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(j)     Time Difference of Arrival (TDOA), and,

3

(k)      Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

(l)      Data records include all date connections between the device and the network via the subject cellular telephone.

## III.   PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.      Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to

4

send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

    c.   IP addresses of any websites or other servers to which the subject cellular telephone connected;

    d.   Source and destination telephone numbers and email addresses;

    e.   "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.    The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.    The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.    The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace

5

devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.     Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.     The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.     Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE  MATTER  OF  AN  APPLICATION  OF      )
THE UNITED STATES OF AMERICA FOR A        )
WARRANT      TO      OBTAIN      LOCATION     )
INFORMATION,   INCLUDING   PRECISION     )      No.  4:23 MJ 3354 NCC
LOCATION   INFORMATION;   SUBSCRIBER     )
AND  TRANSACTIONAL  RECORDS;  CELL         )      **FILED UNDER SEAL**
SITE  INFORMATION;  AND  FOR  A  PEN          )
REGISTER AND TRAP AND TRACE DEVICES    )
FOR PHONE NUMBER (314) 365-5674.               )
.

**REPORT AND RETURN**
**REGARDING INITIAL**

**Date and Time Warrant**
**Sent to Service Provider:**          _____

Date:                              Time:

**Date and Time First Began**
**Monitoring Phone Location:**       _____

Date:                              Time:

**Date and Time Terminated**
**Monitoring Phone Location:**       _____

Date:                              Time:

The  present  warrant  was  obtained  pursuant  to  Title  18,  United  States  Code,  Section
2703(c)(1)(A).   Pursuant  to  Title  18,  United  States  Code,  Section  2703(c)(3),  notice  to  the
subscriber or customer is not required.

**CERTIFICATION**

I declare under penalty of perjury that this Report is correct and was returned along with
the original warrant(s) to the designated judge.

_____                    _____
DATE                                CARLOS QUILES
                                    Special Agent, ATF